236 So.2d 180 (1970)
Patricia A. GLAAB, and Clifford L. Glaab, Her Husband, Appellants,
v.
Marie B. CAUDILL, and David Z. Caudill, Her Husband, Appellees.
No. 69-217.
District Court of Appeal of Florida, Second District.
June 5, 1970.
*181 James S. Welch, of Welch & Dooley, Lakeland, for appellants.
D.A. Troiano, of Troiano, Roberts & Fortner, Lakeland, for appellees.
*182 McNULTY, Judge.
In this negligence action, brought under the guest statute,[1] the plaintiff-wife was a passenger in defendant-husband's car driven by his wife, Marie. At the close of all the evidence at trial the court reserved ruling on defendants' motion for directed verdict and submitted the cause to the jury. The jury returned a verdict in favor of plaintiffs and, thereafter, the court granted the defendant's motion upon which ruling was reserved as aforesaid. Judgment was entered thereon and plaintiffs appeal. We reverse.
In the present posture of the case we must of course consider the evidence in the light most favorable to plaintiffs. It appears that on the day in question, the two wives had purchased a take-out lunch for their families at a fried chicken restaurant and were proceeding home. They were lawfully proceeding at a speed of between 25 and 30 mph in the curb lane of a four-lane thru street, and travelling approximately two feet from the curb. As they passed through an intersection a bag containing six cups of iced tea, which defendant-driver had placed on the seat next to her, spilled over on and behind her. Defendant-driver then took her eyes off the road and both hands off the wheel to retrieve the iced tea. The car veered to the right, travelled approximately thirty-two feet, then jumped the curb and proceeded in a straight line parallel to the curb an additional distance of some sixty-four feet striking a utility pole with the right front fender. Plaintiff-wife testified that when the car struck the curb the driver again grabbed the wheel with both hands but the car "seemed to pick up speed" until striking the pole at a speed estimated by a police officer to be 30 mph. All told, the entire episode was said to have taken no more than three seconds from the spilling of the tea to impact; and the speed and distance factors mathematically corroborate this. It is further undisputed that there were no skid marks, the weather was bright, clear and dry, there was no evidence that the driver was under the influence of alcohol or drugs and the traffic, if any, was very light. The sole question before us is, of course, whether these facts make out a prima facie showing of gross negligence.
At the outset, we recognize that articulating the concept of gross negligence has always been difficult; and we submit that the root of the difficulty is the fact that, prior to Carraway v. Revell,[2] gross negligence was apparently fully equated with "wilful and wanton" negligence. The bench and bar have therefore been oriented to that equation. Since Carraway, however, it is clear that there is a difference between the two; but the semantic divorce separating them, it seems, has never quite been finalized. We hope our discussion here of gross negligence will at least discourage re-cohabitation.
By definition, it is now rudimentary that gross negligence is that act or omission which a reasonable, prudent man "would know would probably and most likely", result in an injury to another;[3] and, from a standpoint of degree, it is clear that gross negligence lies between simple negligence and the "wilful and wanton" conduct sufficient, if death results, to constitute "culpable negligence" within the crime of manslaughter.[4] But we would agree that such "* * * delimitation of `gross' or `wanton' negligence from other forms of negligence is neither conceptually satisfactory nor practically simple * * *";[5] so this case affords us an opportunity to suggest what we perceive to be a workable set of criteria to assist in the determination of prima facie gross *183 negligence vel non in automobile guest-passenger cases.
Our analysis of the cases on the subject leads us to conclude that, first of all, gross negligence presupposes the existence of a "composite" of circumstances which, together, constitute an "imminent" or "clear and present" danger amounting to more than normal and usual highway peril.[6] These circumstances may involve, (1) speed which is excessive when coupled with a special hazard such as slippery or impaired road conditions, a sharp curve, a narrow bridge or abutment, hazardous traffic conditions, impaired visibility, or defective tires, brakes or other equipment;[7] or (2), absent the question of speed, such circumstances may involve protracted inattention coupled with one or more of the foregoing special hazards;[8] or (3) they may involve intentional or voluntary mis-operation or non-operation of an automobile coupled with conditions which, in the event of such mis-operation or non-operation, would constitute a "clear and present" danger;[9] or finally, they may involve a clear likelihood of unintentional or involuntary impaired ability or loss of control coupled with conditions which, upon such impairment or loss of control, would constitute a "clear and present" danger.[10] The "clear and present" danger spoken of, then, may be a "critical mass" of ordinary hazards, or it may result from such a flagrant act or omission of the driver that normal conditions thereupon become "imminently" perilous.
Secondly, gross negligence must be predicated on a showing of chargeable knowledge or awareness of the imminent danger spoken of.[11]
And thirdly, the act or omission complained of must occur in a manner which evinces a "conscious disregard of consequences",[12] as distinguished from a "careless" disregard thereof (as in simple negligence) or from the more extreme "wilful *184 or wanton" disregard thereof (as in culpable or criminal negligence).[13] Stated another way, given chargeable awareness as aforesaid, we equate "conscious disregard of consequences" with a voluntary act or omission in the face of conditions toward which reasonable prudence requires a particularly keen alertness or caution when such act or omission is dangerous and well-calculated to result in grave injury.[14] On this point, we think that the "probable and most likely" test, as reaffirmed in Carraway v. Revell, supra, does not contemplate mathematical probability in the sense that an accident or injury is more likely to occur than not. Analysis of subsequent cases bears this out[15] as does, indeed, the very language of the Carraway court in articulating the rule: "* * * To put it another way," it was said, "if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or `clear and present' that negligence is gross, whereas other negligence would be simple negligence."[16] [Italics supplied] We construe this to mean that the chance of injury resulting from the complained of conduct must be more than a real possibility, though not necessarily better than a 50-50 probability. Who, for example, would pass on a blind curve of a two-lane highway if there were but one chance in six of meeting an oncoming car?
Hypothesizing this rationale, it's logical to assume that at some point along the line in a potential gross negligence situation the composite of circumstances or conditions will present a risk of grave injury which a rational person of mature judgment is simply unwilling to assume. On the lower extreme, to illustrate, negotiating a sharp curve at twenty mph, with chargeable awareness that nine hundred ninety-nine out of a thousand cars safely do so, would unquestionably be a minim of risk; and taking such a risk, we can say, would not be negligence at all. As speed would increase, however, so of course would the risk, until a point is reached where an accident or injury, as a consequence of careless inattention, oversight or error in judgment, is foreseeably more than a mere possibility. Imprudence at this point would be a careless disregard of danger; and it can be said then, we think, that this point would be the predicate for ordinary negligence. But on the high side of a potential gross negligence situation, negotiating that same curve at, say fifty mph, with chargeable awareness that twenty-five per cent of the cars do not make it at that speed, might well be a risk a person of mature judgment wouldn't consciously and willingly take (except as might be required in an emergency) notwithstanding that he has a better than 50-50 chance of making it. At this point in the spectrum, we therefore think that a driver should be particularly and keenly alerted to caution in approaching that curve at fifty mph. If regardless of the apparent risk, and regardless of the particular alertness called for, a driver voluntarily and consciously attempts to take that curve at fifty mph a jury might very well think he envinced a "conscious disregard of consequences" to the extent that he knew such action "would probably and most likely" result in a serious accident.
In the context of our discussion here, then, relating to the prima facie essentials of gross negligence, the act or *185 omission complained of must be fairly susceptible of the inference that the driver, with chargeable awareness of "imminent" peril, did not prudently respond to the particularly keen alertness or caution required by the conditions and risk then apparent. Postulating it otherwise, imprudence in response to circumstances calling for ordinary caution may be simple negligence, but the same act of imprudence in response to circumstances requiring a greater abundance of caution may well be gross negligence.
We hasten to point out, however, that the mere act or omission complained of, even though the alleged tort-feasor is chargeable with knowledge or awareness of imminent danger, is not always probative of a "conscious disregard" thereof. This is so because such act or omission may result from a reflex or natural reaction to a sufficient sudden influence such as an insect sting, burning ashes from a cigarette or pipe, a foreign body blowing into the eyes or other unexpected and sudden stimulus.[17] In this regard, the disputed issues of fact peculiar to each case must control whether a jury question is presented as to "consciousness" of the act or omission complained of.
Incapsulating its components sequentially, then, gross negligence consists of a conscious and voluntary act or omission which is likely to result in grave injury when in the face of a clear and present danger of which the alleged tort-feasor is aware. When considered in the context of our earlier discussion of its parts, we think this theorem renders operative the definition, and degree, of gross negligence as promulgated in Carraway v. Revell, supra.[18] Accordingly, to establish a case submissible to a trier of fact there must be a prima facie showing of a composite of circumstances, which, together, constitute a clear and present danger; there must be a prima facie showing of an awareness of such danger; and there must be a prima facie showing of a conscious, voluntary act or omission in the face thereof which is likely to result in injury.
Applying these criteria to the case before us, now, we consider first whether there was a prima facie showing of a composite of circumstances which constituted a "clear and present" danger. Initially, we do not think that, of itself, knowingly placing the cups of iced tea on the front seat next to the driver, even if it be anticipated that they might spill, was a predicate to the creation of a "clear and present" danger; so the case is not one which falls within the last category of circumstances discussed earlier wherein there is a clear likelihood of an involuntary act or omission contributing to such clear and present danger.[19] But alluding to the act or omission complained of, i.e., taking both eyes off the road and both hands off the wheel, we think the case falls within the third category of such circumstances. That is, the question is whether the defendant-driver's "non-operation" of the automobile *186 combined with existing conditions to present the clear and present danger spoken of. (The voluntariness aspect will be discussed infra.) She was driving between twenty-five and thirty mph approximately two feet from a road curbing along which there were utility poles. By vectoring out the speed and distance factors, using rudimentary formulae and common experiences, a jury might well conclude that a prudent person under such circumstances would have been put on particularly keen alert to the proximity, in terms of both time and distance, of the efficient means of losing control of the automobile. How can we say as a matter of law, therefore, that the jury was without authority to find that taking both eyes off the road and both hands off the wheel under these conditions presented a "clear and present" danger?
Secondly, there is nothing in the record to negate, nor indeed does defendant-driver deny, that she was aware of all attendant and surrounding circumstances and conditions. She is legally chargeable with having seen that which was in plain sight and, additionally, with the same knowledge of the consequences of non-operation of the automobile in the face thereof as possessed by a reasonably prudent person.
Finally, concerning "conscious disregard of consequences", we cannot say, as a matter of law, that her reaction to the spilled iced tea was a reflex or natural reaction to a sudden and unexpected stimulus.[20] Consequently, assuming a finding of chargeable knowledge of all attendant circumstances, the jury could also have found that the act or omission complained of was a voluntary and conscious reaction to those circumstances. Moreover if they had theretofore concluded that such nonoperation combined with those same circumstances to present a clear and present danger, and thus called for the particularly keen alertness and caution of which we spoke, they could well have found that her voluntary and conscious non-operation of the automobile was an imprudent response to that alertness and caution. This, we hold, would amount to a finding that she was chargeably aware that her conduct was such as to "probably and most likely" result in injury to her passenger. In any event, it was at least a doubtful case on this point and, as such, is properly a jury question.[21]
In sum, from the evidence herein a jury could have found that the non-operation of defendant's automobile was a voluntary and conscious act or omission; and that under the circumstances herein was such that a reasonable, prudent person would know that it presented a clear and present danger of grave injury to the extent that it "would probably and most likely" result in such injury. The jury, after being properly instructed on gross negligence, did so find, and it was error to thereafter grant a directed verdict in favor of defendants.
Accordingly, the judgment appealed from should be, and it is hereby, reversed; and the cause is remanded for further proceedings not inconsistent herewith.
Reversed.
LILES, A.C.J., and PIERCE, J., concur.
NOTES
[1] § 320.59, F.S.A.
[2] (Fla. 1959), 116 So.2d 16.
[3] Id. See, also, Florida Standard Jury Instructions, Model charge 4.2.
[4] See Carraway v. Revell, n. 2 supra, at 22.
[5] Hodges v. Helm (Fla. 1969), 222 So.2d 418, 419.
[6] See, e.g., Hodges v. Helm (Fla. 1969), 222 So.2d 418; Bridges v. Speer (Fla. 1955), 79 So.2d 679; Le Fevre v. Bear (Fla.App.2d 1959), 113 So.2d 390; and Myers v. Korbly (Fla.App.2d 1958), 103 So.2d 215.
[7] See, Myers v. Korbly, id. See, also, 3 Fla.Jur., Automobiles § 123.
[8] See, e.g., Hellweg v. Holmquist (Fla. App. 4th 1967), 203 So.2d 209; and Farrey v. Bettendorf (Fla.App.3d 1960), 123 So.2d 558, in which the drivers of the vehicles involved, being chargeable with awareness of the clear and present danger, turned their attention from the road to engage in protracted conversation with a passenger.
[9] See, e.g., Gittleman v. Dixon (1941), 148 Fla. 583, 4 So.2d 859, in which the driver of an automobile deliberately, and for a protracted period of time, turned her body to adjust some packages on the rear floor of the car, taking both hands off the steering wheel to accomplish her purpose. We are aware, too, of an unreported case, which we believe also falls within this category, wherein the driver of an automobile suddenly and without warning intentionally shot himself to death while the automobile was in motion, resulting in injury to a guest-passenger from an ensuing collision.
[10] This category would include operation of a vehicle while under the strong influence of alcohol or drugs. See Herring v. Eiland (Fla. 1955), 81 So.2d 645. See, also, e.g., Goodis v. Finkelstein (Fla. App.3d 1965), 174 So.2d 600, in which the driver of an automobile, subject to frequent blackouts while driving, was held to have anticipated the blackout in question as a result of which a guest-passenger was injured. The following statement of the driver, made upon regaining consciousness after the accident, was considered probative of a likely, though unintentional, loss of control in a gross negligence situation: "Oh my God, I must have passed out again! I thought this would happen!" And, Cf. Bridges v. Speer, n. 5, supra, and Johnson v. State (1941), 148 Fla. 510, 4 So.2d 671, which was a manslaughter case involving falling asleep at the wheel with chargeable knowledge of extreme fatigue.
[11] Cf. Bridges v. Speer, n. 6, supra.
[12] Faircloth v. Hill (Fla. 1956), 85 So.2d 870. See, also, Frank v. Lurie (Fla.App.2d 1963), 157 So.2d 431, 434.
[13] Since Carraway v. Revell, n. 2, supra, we now perceive "wilful or wanton" conduct to be criminal negligence, amenable to punitive redress, whereas gross negligence as such is necessarily something less. We therefore distinguish a "conscious disregard of consequences" from that "wantonness or recklessness, * * or that reckless indifference to the rights of others which is equivalent to an intentional violation of them." [Italics supplied] Cannon v. State (1926), 91 Fla. 214, 107 So. 360.
[14] Cf. Faircloth v. Hill, n. 12, supra.
[15] See, e.g., Hodges v. Helm, n. 5, supra; and Webster v. Kemp (Fla. 1964), 164 So.2d 814.
[16] See n. 2, supra, at 23.
[17] Cf., Cook v. Lewis K. Liggett Co. (Fla. 1937), 127 Fla. 369, 173 So. 159 and Hormovitis v. Mutual Lumber Co. (Fla. App.2d 1960), 120 So.2d 42. See, also, 65 C.J.S. Negligence § 17.
[18] We recognize, of course, that the "clear and present danger" of which we speak may also form a predicate for "wilful and wanton" conduct in the face thereof, thus giving rise to culpable negligence; and we recognize, also, that a "conscious disregard" of more extreme danger may also constitute culpable negligence. Indeed, under the guest statute recovery may be had in either case. Our discussion here, however, is concerned more with the minimal aspects of gross negligence in the context of that conduct which will "probably and most likely" cause injury to another. See, also, comments in n. 13, supra.
[19] We acknowledge that our conclusion may well be different on this point if the object knowingly placed on the seat next to the driver was extremely hot, or were another of this class of object likely to stimulate a violent or panic reaction if it spilled on or touched the driver. Iced tea is not of this class.
[20] Again, our answer might well be different if it were very hot tea or the like. See, also, our comments id. In this latter case, however, knowingly placing such a stimulus on the front seat could well bring the case within the fourth category of circumstances relating to a clear and present danger.
[21] Carraway v. Revell, n. 2, supra, 116 So.2d at 22.