559 So.2d 98 (1990)
C.W. HOYT, Appellant,
v.
Donald CORBETT, As Personal Representative of the Estate of Guy Corbett, Deceased, and Donald Corbett and Claire Corbett, the Decedent's Surviving Parents, Appellees.
Nos. 88-0779 and 88-0780.
District Court of Appeal of Florida, Fourth District.
March 21, 1990.
Rehearing and Rehearing Denied April 30, 1990.
*99 Mark R. Boyd and Gilbert E. Theissen of Walsh, Theissen & Boyd, P.A., Fort Lauderdale, for appellant.
Arnold R. Ginsberg of Horton, Perse & Ginsberg, Miami, and Brumer, Cohen, Logan, Kandell & Kaufman, P.A., Miami, for appellees.
Rehearing and Rehearing En Banc Denied April 30, 1990.
FRANK, RICHARD H., Associate Judge.
C.W. Hoyt appeals from final judgments and a cost order awarding the decedent's personal representative and parents the aggregate sum of $554,772.04. We reverse.
This case arises from the unfortunate accidental death by electrocution of twenty-one year old Guy Corbett, a laborer employed by a seawall and dock construction and repair business. At the time of the event, Hoyt was president and forty-five percent stockholder of A & H Seawall. On November 21, 1984 Corbett, along with several other workers from A & H Seawall, was dispatched to a private residence to repair a dock. While standing on a "footer" on the seawall, a structure below the lip of the seawall and covered with water depending upon the tides, Corbett picked up a drill attached to an electrical cord and was electrocuted. The force threw him into the water; another man pulled him out but attempts at resuscitation were unavailing.
Because Corbett was killed while acting within the course and scope of his employment, the original lawsuit against A & H Seawall was terminated by summary judgment pursuant to the exclusivity provisions of section 440.11, Florida Statutes (1985).[1] The action was refiled against Charlie Day, Corbett's supervisor and co-employee. Shortly thereafter the complaint was amended to name Hoyt as an additional defendant. Hoyt and Day were charged with five acts of gross negligence leading to the death of Corbett: (1) removing the grounding plug from the electrical cord; (2) improperly splicing the cord; (3) failing to inspect the cord properly; (4) failing to instruct the decedent properly; and (5) providing dangerous and defective equipment to the defendant. At the commencement of trial, Day was voluntarily dismissed. Hoyt has contended on appeal that the trial court erred in failing to direct a verdict in his favor on the ground that under no view of the evidence could it be said that he acted with gross negligence, the liability standard prescribed in section 440.11, Florida *100 Statutes, essential to maintenance of the instant lawsuit. We agree.
In Streeter v. Sullivan, 509 So.2d 268, 271 (Fla. 1987), the supreme court stated that sections 440.01 and 440.11(1) "unambiguously impose liability on all employees for their gross negligence resulting in death or injury to their fellow employees. This imposition of liability is blind to corporate status." Hoyt, as an officer of A & H Seawall, is just as liable as any other employee for acts which are grossly negligent; his status as president of A & H Seawall affords him no greater immunity than any other employee of the employer. Thus, although Hoyt is amenable to suit, the ultimate facts alleged and proven, taken in a light most favorable to the personal representative and the parents, must show that his acts or failure to act ascended to the level of gross negligence. In this case, however, the facts fall short of satisfying that high standard.
It was stated in Glaab v. Caudill, 236 So.2d 180, 183-184 (Fla. 2d DCA 1970), that a finding of gross negligence requires the following:
[F]irst of all, gross negligence presupposes the existence of a "composite" of circumstances which, together, constitute an "imminent" or "clear and present" danger amounting to more than normal and usual ... peril... .
Secondly, gross negligence must be predicated on a showing of chargeable knowledge or awareness of the imminent danger spoken of.
And thirdly, the act or omission complained of must occur in a manner which evinces a "conscious disregard of consequences," as distinguished from a "careless" disregard thereof (as in simple negligence) or from the more extreme "willful or wanton" disregard thereof (as in culpable or criminal negligence).
From our review of the entire record, and especially when it is assessed most favorably to the personal representative and the parents, we are unable to discern any act or omission attributable to Hoyt reaching the statutorily required degree of negligence.
An ex-employee of A & H Seawall, Critchlow, testified that he gave the cord that ultimately caused Corbett's death to Day, the supervisor. The only evidence of Hoyt's involvement in the incident reveals that he was present when the cord was given to Day. It was undisputed that Hoyt had established a policy, virtually from the inception of his business, that the laborers and supervisors were to turn in defective electrical cords and small tools to the office for repair by Fisher Electric, a firm located in a neighboring building. It was Day's responsibility to have the cord repaired.
When Critchlow gave the cord to Day, there existed no composite of circumstances constituting a clear and present danger to any person, and as far as Hoyt knew or could reasonably anticipate, the cord had effectively been taken out of service. Moreover, even if it could be inferred that Hoyt had sufficient "chargeable knowledge" of a situation created by the manner in which the defective cord was handled after being given to Day, no imminent harm threatened any person. There is no evidence capable of indicating, let alone establishing, that Hoyt committed an act or omission evincing a conscious disregard of consequences; he knew only that the cord was out of use and to be repaired in accordance with his instruction.
The plaintiffs made much during their case in chief of the testimony of Dr. Ronald Wright, the medical examiner, who testified that a ground fault interceptor would have prevented electrocution in this case. Hoyt admitted, as did the other workers who testified, that he had never heard of this device prior to the accident, even though required by applicable OSHA regulations. It is significant, however, that Wright also testified that Corbett would not have been electrocuted had he worn his safety gloves, as was required by company policy  established by Hoyt  in hazardous locations such as the place where Corbett was working when he was killed. Thus, although the accident may have been avoidable had a different set of circumstances existed, it cannot be said that Hoyt was grossly negligent in failing to insure that a *101 particular combination of events not occur. This is so in light of the undisputed testimony describing Hoyt's safety rules which were communicated to the workers by supervisory personnel.
Finally, in developing his defense Hoyt exposed the events that led to the defective cord's presence at the accident site. Day testified that he had spliced and taped the cord in violation of Hoyt's safety rules. He had put the cord on his truck intending to take it to Fisher Electric, but he forgot to do so and it remained in his truck. In spite of the fact that there were some five non-defective cords on the truck, someone removed the defective one and plugged it in, thus making the fatal, but accidental, mistake. If there were any negligence, in any degree, on the part of Hoyt (which we cannot extract from the record), Day's actions and omissions, constituting simple negligence, were the supervening proximate cause of Corbett's death.
Accordingly, because the evidence presented at trial was legally insufficient to sustain the cause of action, we reverse the order denying Hoyt's motion for directed verdict, vacate the cost order and the final judgments, and remand for the entry of judgment in favor of Hoyt.
DOWNEY and DELL, JJ., concur.
NOTES
[1] Section 440.11(1), Florida Statutes (1985), provided as follows:

(1) The liability of an employer prescribed in s. 440.10 shall be exclusive and in place of all other liability of such employer to any third-party tortfeasor and to the employee, the legal representative thereof, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or the legal representative thereof in case death results from the injury, may elect to claim compensation under this chapter or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by negligence of a fellow servant, that the employee assumed the risk of employment, or that the injury was due to the comparative negligence of the employee. The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death, nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment.