# Third District Court of Appeal

## State of Florida

Opinion filed.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D14-566
Lower Tribunal No. 10-43079

————————————

**Mirta Moradiellos, etc.,**
Appellant,

vs.

**Gerelco Traffic Controls, Inc., etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Rosa I. Rodriguez, Judge.

Diaz Reus & Targ, LLP, and Juan Ramirez, Jr.; Alan Goldfarb and Liah Catanese, for appellant.

Restani, Dittmar, & Hauser, P.A., and Helen Ann Hauser, for appellee.

Before SALTER, EMAS, and LOGUE, JJ.

LOGUE, J.

Arturo Moradiellos, an asphalt surveyor, was run over and killed by a truck owned and operated by his employer while working at night on the Florida Turnpike. His wife, Mirta Moradiellos, in her individual capacity and as representative of the estate (jointly, "the Estate"), sued his employer and various subcontractors for wrongful death. In the order under appeal, the trial court granted final summary judgment in favor of one of the subcontractors, Gerelco Traffic Controls, Inc. ("Gerelco"). We affirm.

FACTS AND PROCEDURAL BACKGROUND

The project on which Mr. Moradiellos was killed entailed the widening of the Florida Turnpike, from north of Sunrise Boulevard to Atlantic Boulevard, a distance of approximately seventeen miles. The general contractor on this Florida Department of Transportation project was Community Asphalt Corporation ("General Contractor"). The General Contractor, in turn, hired various subcontractors including Gerelco. Gerelco was responsible for the repair and maintenance of the existing highway lighting during construction.

The accident happened in the dark of night at 3:00 a.m. on December 9, 2009. Mr. Moradiellos's job was to determine where road surface markings and traffic lines should be painted after the asphalt was laid down. He worked with a surveying device that looks like a telescope. He was equipped with a headlamp and a flashlight which provided sufficient light for him to perform his work that night.

2

According to his supervisor, who, like Mr. Moradiellos, worked for the General Contractor, the surveying crew typically used a rack of portable lamps provided by another subcontractor that is not a party to this appeal. The portable lamps were transported around the project site on a pick-up truck. The supervisor did not request the portable lamps in the nights leading up to the accident because the surveying crew was working in an area closed to traffic and away from where the heavier machines were laying asphalt. Such portable lamps were being used by the asphalt laying crew in an area 500 to 700 feet away from where Mr. Moradiellos was surveying.

Mr. Moradiellos was hit and killed by a dump truck owned by his employer, the General Contractor. Shortly before the accident occurred, the dump truck was stationed a mile north of him, also in the northbound lanes. The driver was told to take the truck to the same area where Mr. Moradiellos was working. The driver was specifically instructed to take the southbound lanes south below the work site and approach the work area driving north on the northbound lanes. Instead, he drove the truck backwards going south on the northbound lanes for over a mile, without any outside assistance to guide him while operating in reverse, even though doing so violated company policy.

In the course of backing up, the truck ran over and killed Mr. Moradiellos. Mr. Moradiellos was facing away from the truck and speaking on the radio with his

supervisor when the accident occurred. According to the supervisor, no one expected equipment to come south in the closed northbound lanes. Within fifty feet of the accident was a high mast street light that was not working.

Following Mr. Moradiellos' death, the Estate filed suit against multiple parties involved on the project including Gerelco. The Estate's claim against Gerelco focused on Gerelco's failure to keep the high mast light near the accident in working order.

Gerelco was the subcontractor responsible for repair and maintenance of the high mast and other traffic street lights on the project. Gerelco was clearly on notice that the mast light was out, as was the State of Florida, the General Contractor, and other contractors. In fact, on May 14, 2008, pursuant to instructions, Gerelco had taken the light down so a temporary road could be built over the place where the light stood. On October 16, 2009, Gerelco put the light back up and reconnected it to its power source. However, the light failed to function, apparently because the conduit and wire that connected the light to its power source had been crushed or cut during the course of constructing the temporary road. Inspectors noted and told Gerelco at least four times that the subject light (and other lights along the widening project) were not lit and needed to be fixed.

4

In fact, on December 1, 2009, seven days before the accident, a Gerelco crew had attempted to activate the light by changing its power source from its existing lines and conduit, which were damaged at an unknown place, to the electrical circuit that powered more modern street lights recently installed on a nearby ramp. Before that work was finished, however, the crew was tasked to repair a light problem in the area of a toll booth, which Gerelco decided was a higher priority. In total, the light remained out for almost a year and half before the accident occurred.

The original complaint was filed on August 10, 2010. Approximately three year and a half years later, on January 14, 2014, the court heard Gerelco's motion for summary judgment which was based on the contention that it was immune from suit under the workers' compensation law. In response to the summary judgment, the Estate argued that Gerelco was liable under the unrelated works and the gross negligence exceptions to immunity. The trial court granted summary judgment for Gerelco. This appeal followed.

## ANALYSIS

### A. Unrelated Works

The Estate first argues that Gerelco can be answerable in tort for simple negligence because Gerelco's actions come within the unrelated works exception to workers' compensation immunity. On this point, the threshold issue is whether

the unrelated works exception to immunity applies to a claim by an employee of the contractor, like Mr. Moradiellos, against a subcontractor who secured workers' compensation insurance for its employees, like Gerelco. We hold that it does not. We reach this conclusion based on the following analysis.

First, the unrelated works exception applies only to fellow "employees." The governing statute's language clearly limits the unrelated works exception to employees. The statute first discusses an employer's liability to pay statutory benefits to injured employees and provides that such liability is exclusive, and therefore, the employer is immune from other claims by injured employees, unless the employer failed to secure payment of the statutory benefits or unless the employer commits an intentional tort as defined in the statute. § 440.11 (1), Fla. Stat. (2014). The statute then goes on to discuss separately the liability of employees. An employee, the statute provides, is entitled to the same immunity as the employer unless (1) the employee acts with willful and wanton disregard, unprovoked physical aggression, or gross negligence, or (2) the employee and the injured employee "are assigned primarily to unrelated works." 440.11 (1)(b)2. The provision regarding immunity for employees reads as follows:

> The same immunities from liability enjoyed by an employer shall extend as well to each employee of the employer when such employee is acting in furtherance of the employer's business and the injured employee is entitled to receive benefits under this chapter. Such fellow-employee immunities shall not be applicable to an employee who acts, with respect to a fellow employee, with willful and wanton

6

disregard or unprovoked physical aggression or with gross negligence when such acts result in injury or death or such acts proximately cause such injury or death, <u>nor shall such immunities be applicable to employees of the same employer when each is operating in the furtherance of the employer's business but they are assigned primarily to unrelated works within private or public employment</u>.

<u>Id.</u> (emphasis added).

The unrelated works language highlighted above is specifically contained in the provision dealing with immunity for employees and, as such, applies only to employees. <u>Vallejos v. Lan Cargo S.A.</u>, 116 So. 3d 545, 551 (Fla. 3d DCA 2013) (holding the "unrelated works" exception found in section 440.11(1)(b)(2) applies only to fellow-employees); <u>Taylor v. Sch. Bd. of Brevard Cnty.</u>, 888 So. 2d 1, 7 (Fla. 2004) (Lewis, J., concurring) ("Clearly, this unrelated works exception to the rule of general immunity applies only in the co-employees context.").

That the "unrelated works" exception applies only to employees is important because the statutory definition of "employee" expressly excludes a subcontractor who has secured payment of compensation coverage for its employees. The statutory definition reads in pertinent part:

All persons who are being paid by a construction contractor as a subcontractor, <u>unless the subcontractor</u> has validly elected an exemption as permitted by this chapter, or <u>has otherwise secured the payment of compensation coverage as a subcontractor, consistent with s. 440.10, for work performed by or as a subcontractor</u>.

7

§ 440.02 (15)(c)2, Fla. Stat. (2014) (emphasis added). It is undisputed in this record that Gerelco secured the required payment of compensation. Therefore, it is not an "employee" as that term is defined in the statute.

Because the unrelated works provision applies only to "employees," and Gerelco, as a subcontractor who secured the payment of compensation, is not an "employee," it follows that Gerelco is not a fellow employee subject to the unrelated works exception to immunity.

This conclusion is separately confirmed by reading section 440.10(e), Florida Statutes (2014), which is the specific provision dealing with immunity for subcontractors. In the same 2003 law changing the statutory definition of the term "employee" to exclude subcontractors who secured payment of compensation, the Legislature added the language in section 440.10(e) providing that a subcontractor is protected by the exclusiveness-of–liability provisions from claims by the employees of the contractor or of other subcontractors, if it secured compensation for its employees and the injury was not caused by the subcontractor's gross negligence. Ch. 2003-412, § 1 & 8, Laws of Fla. (amending §§ 440.02 (15)(c) & 440.10 (e)).

After the 2003 amendment, section 440.10(e) now reads:

(e) A subcontractor providing services in conjunction with a contractor on the same project or contract work is not liable for the payment of compensation to the employees of another subcontractor

8

or the contractor on such contract work and <u>is protected by the exclusiveness-of-liability provisions of s. 440.11 from any action at law or in admiralty on account of injury to an employee of another subcontractor, or of the contractor, provided that</u>:

1. <u>The subcontractor has secured workers' compensation insurance for its employees</u> or the contractor has secured such insurance on behalf of the subcontractor and its employees in accordance with paragraph (b); <u>and</u>

2. <u>The subcontractor's own gross negligence was not the major contributing cause of the injury</u>.

(emphasis added).

The legislative staff report explained that the purpose of these changes was to provide the following:

> [I]mmunity to a subcontractor from lawsuits by employees of another subcontractor or the contractor, if the subcontractor is providing services in conjunction with a contractor on the same project or contract work, under certain conditions. The conditions are that the subcontractor or contractor has secured workers' compensation coverage for the subcontractor's employees and the subcontractor's own gross negligence was not the major contributing cause of the injury.

Banking & Ins. Comm., S. Staff Analysis & Econ. Impact Statement, SB 50-A, at 5 (Fla. May 19, 2003). Case law confirms that the purpose of this new language was "to restore subcontractor immunity from tort claims brought by either a general contractor or another subcontractor's employee (vertical and horizontal immunity)." <u>Ramcharitar v. Derosins</u>, 35 So. 3d 94, 97 (Fla. 3d DCA 2010).

9

As is apparent, the provision of the law providing immunity to subcontractors has an exception to immunity for gross negligence, but, unlike the specific provision for fellow employees, does not have an exception to immunity for unrelated works. Compare § 440.10(e) with § 440.11(1). If the Legislature wanted subcontractors to be subject to an unrelated work exception to immunity, it obviously knew how to provide for the exception: it had done so in the provision addressing immunity for fellow employees. Therefore, the absence of an unrelated works exception in the statutory provision dealing with subcontractor immunity indicates that the Legislature did not intended to provide an unrelated works exception from immunity to subcontractors who had secured compensation for their employees.

Accordingly, we hold that the current versions of sections 440.02 (15)(c), 440.10 (e), and 440.11, when read together, provide that the "unrelated works" exception to immunity does not apply to a claim by an employee of the contractor, like Mr. Moradiellos, against a subcontractor who secured workers' compensation insurance for its employees, like Gerelco.[1] In light of this holding, we do not reach

---

[1] At oral argument, the parties discussed whether the Estate might have used the unrelated works doctrine to sue individuals working for Gerelco, who would qualify as fellow employees, and hold Gerelco vicariously liable for their negligence. We do not reach this issue because the Estate sued only Gerelco directly: it did not name as a defendant any individuals who worked for Gerelco or plead a cause of action for vicarious liability against Gerelco. We note, however, that the Legislature in 2003 expressly provided that the immunities in the statute extended to "vicarious liability." Ch. 2003-412, § 14, Laws of Fla. (amending §

10

the question of whether Mr. Moradiellos and Gerelco were assigned to unrelated works.

B. Gross Negligence

The second issue involves the theoretically clear, but sometimes difficult-to-apply, distinction between simple negligence and gross negligence. We hold that the trial court properly entered summary judgment on the issue of gross negligence.

"Summary judgment is designed to test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings." Fla. Bar v. Greene, 926 So. 2d 1195, 1200 (Fla. 2006). At both the trial and appellate level, all evidence and inferences from the evidence must be taken in the light most favorable to the non-moving party.

440.11(1)).

Also, cases suggesting that such vicarious liability is available were either decided under the statute before it was amended in 2003, Wright v. Hartford Underwriters Ins. Co., 823 So. 2d 241 (Fla. 4th DCA 2002), or involve the unique context of sovereign immunity where, by statute, a cause of action in negligence against a government employee is barred because an alternative remedy against the employing government is expressly authorized. See § 768.28 (9)(a), Fla. Stat. (2014); see also Aravena v. Miami-Dade Cnty., 928 So. 2d 1163, 1168 (Fla. 2006) (holding, under the sovereign immunity statute, "any negligence claim arising under the unrelated works exception against a public coemployee must be brought against the governmental entity employer"); Holmes Cnty. Sch. Bd. v. Duffell, 651 So. 2d 1176, 1179 (Fla. 1995) ("The School Board is not being sued in its capacity as Duffell's employer. Instead, pursuant to section 768.28 (9)(a), it is being sued as a surrogate defendant based on the negligent acts of . . . a fellow public employee."). For a further discussion, see Vallejos, 116 So. 3d at 551, n.9.

11

See, e.g., Fla. Bar v. Rosenberg, 40 Fla. L. Weekly S306, S307 (Fla. May 28, 2015); Markowitz v. Helen Homes of Kendall Corp., 826 So. 2d 256, 259 (Fla. 2002). Summary judgment is proper only if, taking the evidence and inferences in the light most favorable to the non-moving party, and assuming the jury would resolve all such factual disputes and inferences favorably to the non-moving party, the non-moving party still could not prevail at trial as a matter of law. Id.; see also Fla. R. Civ. P. 1.510(c).

As discussed above, because Gerelco is a subcontractor who secured compensation, Gerelco is entitled to immunity unless the accident was caused by its gross negligence. §440.10 (1)(e)(2). In the context of summary judgment, therefore, the issue is whether a jury could find that Gerelco's actions were grossly negligent based upon the facts in the record, interpreted in the light most favorable to the Estate, as the non-moving party. We hold that a jury could not find that Gerelco was grossly negligent on the facts in this record.

The difference between simple and gross negligence has been described as follows:

> [S]imple negligence is that course of conduct which a reasonable and prudent man would know might possibly result in injury to persons or property whereas gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property. To put it another way, if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or "clear

and present" that negligence is gross, whereas other negligence would be simple negligence.

Weller v. Reitz, 419 So. 2d 739, 741 (Fla. 5th DCA 1982) (citations omitted). Thus, gross negligence requires: "(1) circumstances constituting an imminent or clear and present danger amounting to a more than normal or usual peril, (2) knowledge or awareness of the imminent danger on the part of the tortfeasor, and (3) an act or omission that evinces a conscious disregard of the consequences." Vallejos, 116 So. 3d at 552.

The fact that a street light on a highway is not functioning creates a certain level of danger by increasing the possibility that diminished lighting conditions may play a role in causing an accident. The widening of the highway, however, meant that a portion of the street lights would be out of service at any one time. The undisputed evidence indicated the heavy equipment and digging, which occurred in the normal course of construction, caused conduits to be crushed, wires cut, and fiber optics destroyed along the entire project. In addition, the widening of the highway sometimes required the intentional deactivation of lights, as occurred with the high mast at issue. Gerelco was managing a situation in which lights were being continually deactivated either by accident or design. Apparently for this very reason, the underlying contracts recognized that ten percent of the lights on the seventeen mile stretch of highway being widened might be out at any one time. This is not a case in which the condition at issue itself created an obvious clear and

13

present danger of serious harm. Villalta v. Cornn Int'l, Inc., 109 So. 3d 278, 279 (Fla. 1st DCA 2013) (holding the issue of gross negligence was a jury question where a subcontractor failed to obey safety standards and cover holes it cut in concrete floors of a building under construction where many tradespeople were working).

Moreover, the light at issue had been inoperable for almost a year and half without incident. There had been no accidents, no near accidents, no work stoppages, no highway closings, and no other specific problems caused by the non-functioning light. This is not a case where the employer ignored prior dangerous mishaps. See Pyjek v. ValleyCrest Landscape Dev., Inc., 116 So. 3d 475, 478 (Fla. 2d DCA 2013) (holding the issue of gross negligence was a jury question where a fence worker was crushed by a recently-installed palm tree that fell before, was re-planted, and fell again on worker); Sullivan v. Streeter, 485 So. 2d 893, 895 (Fla. 4th DCA 1986) (holding the issue of gross negligence was a jury question where a branch manager was murdered during a robbery after the bank suffered two prior robberies and had withdrawn an armed security guard in violation of their own security manual).

Instead, the facts of this case more closely resemble those in Vallejos, 116 So. 3d at 552-53 (upholding summary judgment in a case where a worker was injured after wrapping rope around his hand because allowing workers to dump a

14

hopper using makeshift rope may have been negligent and more dangerous than other methods, but it did not rise to level of gross negligence) and <u>Merryman v. Mattheus</u>, 529 So. 2d 727, 729 (Fla. 2d DCA 1988) (upholding summary judgment because allowing a crane operator to use a crane with a malfunctioning device designed to prevent lifting the load too high, after instructing crane operator not too lift loads above certain height, did not support finding of gross negligence).

On this record, the lower lighting conditions created a possibility of harm, which is required to prove simple negligence. But they did not create a condition in which an accident would probably and most likely occur, which is required to prove gross negligence. <u>See, e.g.</u>, <u>Weller</u>, 419 So. 2d at 741. Moreover, Gerelco's conduct, even if it rose to a careless disregard required for simple negligence, did not rise to a conscious disregard of consequences required for gross negligence. <u>See</u> <u>Hoyt v. Corbett</u>, 559 So. 2d 98, 100 (Fla. 4th DCA 1990) (quoting <u>Glaab v. Caudill</u>, 236 So. 2d 180, 183-84 (Fla. 2d DCA 1970)). Interpreting the facts in the light most favorable to the Estate as the law properly requires, while a jury may well have found Gerelco's conduct negligent, we agree with the trial court that these facts would not support a jury finding that Gerelco acted with the conscious disregard of imminent danger to others that constitutes gross negligence.

Affirmed.