DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GARY L. MARDER, D.O.,**
Appellant,

v.

**ROBERTA MUELLER,**
Appellee.

No. 4D22-1576

[April 5, 2023]

Appeal of a non-final order from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Laurie E. Buchanan, Judge; L.T. Case No. 562018CA002257.

Dinah S. Stein and Aneta McCleary of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, and Keith J. Puya of the Law Offices of Keith J. Puya, P.A., Palm Beach Gardens, for appellant.

Grace Mackey Streicher and Andrew A. Harris of Harris Appeals, P.A., Palm Beach Gardens, Jordan R. Wagner of Kibbey Wagner, Stuart, and Guy S. DiMartino of Guy S. DiMartino, DC, JD, PA, Leesburg, for appellee.

PER CURIAM.

Appellant Gary Marder ("Doctor") appeals a nonfinal order granting appellee Roberta Mueller's ("Patient") amended motion for leave to amend her complaint to state a claim for punitive damages. In the lawsuit, Patient alleged that Doctor improperly treated Patient using a medically unnecessary course of radiation. We reverse because Patient failed to satisfy the requirements of section 768.72(1), Florida Statutes (2018).

Patient filed the underlying action in connection with Doctor's treatment of a lesion on her hand. Another physician diagnosed this lesion as squamous cell carcinoma following a biopsy, then made a referral to Doctor for treatment. Patient disputes whether this diagnosis was correct. After Doctor discussed various treatment options with her, Patient opted for radiation. As part of obtaining Patient's informed consent, Doctor told her that while surgery was an option it would likely impact Patient's ability to maintain her current lifestyle as an avid golfer. Patient agreed to the

treatment plan offered by Doctor that called for radiation twice daily with treatments as little as forty-five minutes apart. Doctor allegedly prescribed this protocol to all patients undergoing radiation therapy.

Patient subsequently sought leave to amend her complaint to assert a claim for punitive damages on two separate grounds, only one of which is relevant on appeal. Specifically, she asserted that by using a radiation protocol that was not recognized as acceptable in the medical community, Doctor unnecessarily subjected Patient to an increased risk of cancer in her lifetime for financial gain. She maintained the Doctor's actions amounted to more than mere negligence and instead constituted truly culpable behavior reflecting a conscious disregard for her life and safety. In her proffer for punitive damages, she also included three items of evidence she feels are relevant: 1) an attestation by her expert stating Doctor's treatment fell "way outside" the standard of care; 2) Doctor's deposition; and 3) documents related to two federal cases involving Doctor that included allegations of Medicare fraud and obstruction of a criminal health care investigation.

Following a hearing on the motion, the trial court allowed Patient to amend her complaint to add the punitive damages claim related to Doctor's prescribed medical treatment. The court stated:

> [W]ith regard to the treatment protocol and the fraud in the treatment protocol, the allegations of that, I think that they have presented a reasonable basis based on when you look at the fact that they were – they were exposing people. Other than himself, nobody else thinks that exposing people to this – this treatment protocol is appropriate, not dangerous. And to say, well, it's an extremely low amount; it's unlikely to cause, okay, well, then you get to the was this willful, wanton disregard? And I think you have to look at all the evidence – and when you look at all of the proffered evidence – and it's not evidence, it's just a proffer. When you look at the proffer and the fact that if we get them to come back more often, then more and more and more, then all the sudden there's multiple billings, there's a monetary interest and it was done with not a proper intent and, quite frankly, for financial gain with reckless disregard. I think that that's – they've established that reasonable basis to be able to pursue it that way.
>
> I don't think that they put – there was some fraud in making the diagnosis. My problem is, is once that incorrect diagnosis was made, then that opened up this – the treatment that was

absolutely intended to have monetary profit without any regard for whether or not it was needed, appropriate, dangerous, which I think can be – again, all these things, I don't know if it's true or not. It's gonna be a battle of the experts to see if it is. But they are entitled and I do think they have presented a proffer to at least provide that reasonable basis.

We review de novo the trial court's purely legal ruling that Patient made a "reasonable showing" under section 768.72 to recover punitive damages. *Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo for Estate of Sasso*, 48 Fla. L. Weekly D203, D203 (Fla. 4th DCA Jan. 25, 2023) (citing *Holmes v. Bridgestone/Firestone, Inc.*, 891 So. 2d 1188, 1191 (Fla. 4th DCA 2005)).

Section 768.72(1), Florida Statutes (2018), does not permit punitive damages without "a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Subsection (2) adds that "[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds the defendant was personally guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. (2018).

"Intentional misconduct" occurs when "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." § 768.72(2)(a), Fla. Stat. (2018). "Gross negligence" indicates conduct by the defendant that "was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b), Fla. Stat. (2018). "Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights and safety of others." *Owens-Corning Fiberglass Corp. v. Ballard*, 749 So. 2d 483, 486 (Fla. 1999) (quoting *White Constr. Co, Inc. v. Dupont*, 455 So. 2d 1026, 1028 (Fla. 1984)). The conduct must be "so outrageous in character, and so extreme in degree . . . [that] the facts [of the case] to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Cleveland Clinic*, 48 Fla. L. Weekly at D203 (citation omitted).

Patient did not proffer sufficient evidence to demonstrate that Doctor's conduct amounted to intentional misconduct or gross negligence under

section 768.72(2) as opposed to ordinary negligence. Patient's proffered evidence provided no reasonable basis for recovery of punitive damages, which are "reserved for truly culpable behavior and are intended to 'express society's collective outrage.'" *KIS Grp., LLC v. Moquin*, 263 So. 3d 63, 65–66 (Fla. 4th DCA 2019) (quoting *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 706 (Fla. 4th DCA 2008)).

We recently reaffirmed the principle that allegations of a breach of the standard of care, *without more*, cannot form the basis of a punitive damages claim simply by labeling those actions as "grossly negligent." *Cleveland Clinic*, 48 Fla. L. Weekly at D203 (emphasis added). Patient's expert in this matter did not provide the "more" needed to satisfy the punitive damages standard. The expert opined that radiation should be done over an extended time period to not expose a patient to excessive radiation and that such treatment needed to be tailored specifically to the patient rather than a "one-size-fits-all" approach. The expert also concluded that, in his opinion, Doctor's radiation protocol fell "way outside" the standard of care, and he was not aware of any medical professional or peer-reviewed medical journal that condoned Doctor's treatment plan.

However, Doctor's deposition testimony indicated he had personally lectured on his radiation treatment protocol to other dermatologists, an assertion that is not disputed by Patient. Although Doctor could not point to a medical journal that supported this particular treatment protocol, he stated the time frame within which Patient's expert believed radiation treatment should occur was "arbitrary." The trial court was required to consider this information included as part of Patient's proffer when determining whether a reasonable evidentiary basis exists for recovery of punitive damages.[1] *KIS Grp.*, 263 So. 3d at 66; *see also Estate of Blakely by & Through Wilson v. Stetson Univ., Inc.*, 48 Fla. L. Weekly D45, D47 (Fla. 5th DCA Dec. 30, 2022) (finding a plaintiff did not meet "the threshold necessary to state a claim for punitive damages" because the record

---

[1] We note an evidentiary hearing on a motion for leave to assert a punitive damages claim is not required, and a proffer of evidence can support a trial court's determination. *Tilton v. Wrobel*, 198 So. 3d 909, 910 (Fla. 4th DCA 2016). However, we have rejected the notion that a trial court must *only* consider the movant's proffer and accept it as true. *Bistline v. Rogers*, 215 So. 3d 607, 610 (Fla. 4th DCA 2017). Thus, while the trial court is not required to make factual findings, it must also weigh the other side's showing when determining whether a reasonable evidentiary basis exists to recover punitive damages. *KIS Grp.*, 263 So. 3d at 66.

4

evidence did not establish all of the allegations contained in the motion to amend the complaint).

Further, Patient did not proffer anything to suggest that Doctor knew his treatment plan for Patient was unnecessary or likely to cause serious injury to her sufficient to convert her allegations into a claim for punitive damages. *See Cleveland Clinic*, 48 Fla. L. Weekly at D203. For instance, Patient did not allege nor proffer evidence suggesting that Doctor knew the diagnosis was incorrect and nonetheless either proceeded with the treatment plan with that knowledge or committed fraud in obtaining informed consent. *See Weller v. Reitz*, 419 So. 2d 739, 741 (Fla. 5th DCA 1982) (quoting *Glaab v. Caudill*, 236 So. 2d 180, 185 (Fla. 2d DCA 1970)) (distinguishing simple negligence, in which a reasonable person would know the conduct might result in injury, from gross negligence, which is "a *conscious* and voluntary act or omission which is likely to result in *grave injury*") (emphasis added). Patient did not allege she suffered any discernible injury beyond the alleged greater likelihood of developing cancer in her lifetime. *See id.*

Patient's proffer of several federal court filings against Doctor likewise do not support her motion. In one case, Doctor entered a plea to obstruction of a criminal health care investigation and health care fraud. The other case was a civil action involving a *qui tam* proceeding, alleging improprieties in Doctor's Medicare billing practices. Patient asserted the evidence from the two unrelated cases was relevant to show Doctor's intent, motive, and state of mind in prescribing the alleged improper radiation treatment to Patient.

We disagree. Those federal proceedings are irrelevant to this case. Doctor correctly argues that the connection between the federal cases and the instant case is tenuous at best. Using these filings, Patient attempts to improperly bootstrap alleged prior bad acts by Doctor into this unrelated case. For instance, the *qui tam* action pertained solely to Doctor's billing practices, and Patient proffered nothing to suggest that those proceedings involved care and treatment provided to her, other than suggesting that she was a patient of his when Doctor was charged. The *qui tam* action also did not result in any finding that Doctor prescribed improper or harmful amounts of radiation to patients or otherwise violated the standard of care.

Patient argues that the federal cases show Doctor had an improper financial motive in prescribing her radiation treatment by creating a situation where Doctor would be paid more for providing radiation treatment than for performing surgery. Merely alleging that a difference exists in the amount of compensation which a provider receives from

recommending and employing alternative forms of treatment is insufficient to support a punitive damages claim. Regardless, Patient's proffer included unrebutted evidence that Doctor would receive the same Medicare or insurance reimbursements regardless of how many patients were in the radiation treatment protocol. In short, Patient did not provide a link between either Doctor's billing practices *with other patients* or his interference in an unrelated criminal healthcare investigation with any improper motivation for prescribing radiation treatment for Patient.

Based on the foregoing, we find Patient's request to amend to state a claim for punitive damages regarding Patient's alleged improper radiation treatment falls short of satisfying the standard required to assert such a claim. Accordingly, we reverse the order under review and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*

KLINGENSMITH, C.J., MAY and CONNER, JJ., concur.

*   *   *

***Not final until disposition of timely filed motion for rehearing.***