# Third District Court of Appeal

## State of Florida

Opinion filed January 31, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1426
Lower Tribunal No. 08-36794
_____

**Alvaro Gorrin Jr.,**
Appellant,

vs.

**Poker Run Acquisitions, Inc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jennifer Bailey, Judge.

Law Offices Mendez & Mendez, P.A., and Sergio L. Mendez and Daniel J. Mendez, for appellant.

Carlton Fields Jorden Burt, P.A., and Jose A. Loredo and Steven M. Blickensderfer, for appellee.

Before LOGUE, SCALES and LINDSEY, JJ.

LINDSEY, J.

This case involves proceedings supplementary between a creditor and a debtor following the entry of a final judgment for breach of personal guaranties securing a commercial debt. The Debtor, Alvaro Gorrin, Jr. ("Gorrin"), appeals the final summary judgment entered on June 16, 2015, granting the Creditor's, Poker Run Acquisitions, Inc.'s ("Poker Run"), motion for summary judgment and the order denying rehearing entered on May 19, 2016. Because genuine issues of material fact remain in dispute, we reverse.

## FACTUAL AND PROCEDURAL HISTORY

This case originates out of a lawsuit which sought to collect on guaranties executed by Gorrin as part of a loan, originally made by Ocean Bank, for the purpose of financing two condominium conversion projects. Poker Run purchased the loan package from Ocean Bank. In 2008, Poker Run filed suit on the guaranties, out of which these proceedings supplementary arose. On May 26, 2009, the trial court granted Poker Run final summary judgment against Gorrin for breach of the personal guaranties, awarding Poker Run over $19 million. At that time, Gorrin held a 95% interest in Lacross Marina LLC ("Lacross").[1] On August 8, 2009, Gorrin created the Gorrin Family Trust ("the Trust"), wherein he named his mother and brother as trustees and his wife and children as beneficiaries, and

---

[1] Throughout the record, both Poker Run and Gorrin, use the terms Lacross Marina, LLC and Lacross Marina intermittently and interchangeably. Thus, for purposes of this appeal, we refer to both as "Lacross."

transferred to the trust his 95% ownership interest in Lacross. It is this transfer that brings this case back to this Court for yet the fourth time.[2]

In January of 2014, Poker Run resumed discovery in aid of execution and proceedings supplementary seeking to undo the August 8, 2009 transfer of Gorrin's ownership interest in Lacross. On May 5, 2015, Poker Run moved for summary judgment contending there were no genuine issues of material fact and that an unrebutted presumption was created that the transfer was fraudulent by operation of sections 56.29(6)(a)[3] and 726.105(1)(a), (2), Florida Statutes (2015).

In support, Poker Run submitted an affidavit by its President, R. Ford MacConnell ("MacConnell"). In his affidavit, MacConnell stated that suit was filed on June 28, 2008 and summary judgment was entered against Gorrin on May 26, 2009. MacConnell further stated that on August 8, 2009, the Trust was formed; that Gorrin owned a 95% interest in Lacross; and that Gorrin transferred that interest to the Trust on August 13, 2009. He also stated the Public Records revealed that Gorrin remained the managing member of Lacross and referenced a

_____

[2] Subsequent to the trial court's entry of final summary judgment in favor of Poker run in May of 2009, three appeals have been taken to this court. Eventually an amended final judgment was entered, and affirmed on appeal, awarding Poker Run the sum of $30,948,103.23. Gorrin v. Poker Run Acquisitions, Inc., 77 So. 3d 739 (Fla. 3d DCA 2011); Gorrin v. Poker Run Acquisitions, Inc., 137 So. 3d 1102 (Fla. 3d DCA 2014); Gorrin v. Poker Run Acquisitions, Inc., 163 So. 3d 1207 (Fla. 3d DCA 2015).

[3] Section 56.29(6)(a) was the version in effect in 2015. That same subsection was renumbered as subsection 56.29(3)(a) in 2016. However, subsections 56.29(3)(a) and 56.29(6)(3) do not materially differ.

printout from the Florida Secretary of State Division of Corporations that was attached as an exhibit.[4]

In response, Gorrin contended there remained genuine issues of material fact with regard to whether he transferred his interest in Lacross to the Trust with the actual intent to hinder, delay, or defraud creditors. In support, Gorrin submitted his own affidavit and the deposition transcript of Ricardo Beilmann ("Beilmann"), the owner of the remaining 5% interest in Lacross.[5] In his affidavit, Gorrin stated that he retained the services of an attorney to set up the Trust for the benefit of his children for estate planning purposes pursuant to a promise he had made to his wife. Gorrin also stated he was not aware that he had any legal restriction from doing so at the time of the transfer, he did not make this transfer to delay, hinder or defraud any creditor, and he never sought to conceal the transfer.

Further, Gorrin stated he has never managed Lacross, that it has been primarily managed by Beilmann, and he has never worked at the business nor operated it. In addition to his affidavit, Gorrin relied on the deposition testimony of Beilmann wherein Beilmann testified that he was the manager of Lacross and

_____

[4] Poker Run also submitted the deposition transcript of Maria Gonzalez de Gorrin taken on March 6, 2014, but then told the trial court at the summary judgment hearing on June 9, 2015 that it need not be considered.

[5] Also, at the summary judgment hearing, the trial court directed Gorrin to file the original Articles of Incorporation and Operating Agreement for Lacross Marina, LLC (the "LLC Documents"). However, at the time of entry of the order on summary judgment, the trial court had before it only the amended LLC Documents that were created and executed at the time of the transfer at issue.

that his responsibilities included fueling boats, making bank deposits, writing checks making a monthly budget, deciding whether to spend money on the marina and other financial decisions.

However, in its June 16, 2015 order granting final summary judgment, the trial court found Beilmann's deposition testimony unreliable, as he was unable to answer other specific questions about the company's finances and corporate structure. The trial court further found that Gorrin's statement in his affidavit that the transfer was made for estate planning purposes "fails to establish innocence of motive because by transferring the asset as a matter of estate planning it shields the asset from collection by creditors."

In addition to rejecting Gorrin's estate planning explanation as the reason for the transfer, the trial court also found Gorrin's statement – that he has never managed Lacross – to be contradicted by Gorrin's own documents and Beilmann's deposition. Alternatively, the trial court's order found that if Gorrin's affidavit is valid, the transfer of his 95% interest to the Trust was void, as the consent of the managing member was required by Lacross's Operating Agreement. Likewise, the trial court reasoned, if Gorrin was the managing member and the transfer was valid, then his affidavit filed in opposition to summary judgment is false. Based on these findings, the trial court struck Gorrin's affidavit as a sham.

In consideration of the foregoing, the trial court granted final summary judgment finding there were no genuine issues of material fact with regard to whether Gorrin's transfer of his 95% interest in Lacross was fraudulent under Florida law. The trial court also granted a charging lien in favor of Poker Run against Gorrin's interest in Lacross, ordered that the status quo be preserved as to all assets of Lacross, ordered that no distributions be made to Gorrin or the Trust, and required the surrender of all of Gorrin's economic interests in Lacross.

In addition, the trial court reserved jurisdiction to order the sheriff to levy upon a determination that Lacross had no managing member at the time of the order and is subject to dissolution. Gorrin moved for rehearing and the trial court entered an order on May 19, 2016 granting in part and denying in part the motion. This order amended the final summary judgement by striking the provision that stated that upon request of Poker Run, the court will determine whether Lacross is a shell with no actual governing members, in which case it may be subject to dissolution. This appeal follows.

## STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law." <u>Volusia Cty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000). It "is designed to test the sufficiency of the evidence to determine if there is sufficient

6

evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings." Florida Bar v. Greene, 926 So. 2d 1195, 1200 (Fla. 2006). Because summary judgment tests the sufficiency of the evidence to justify a trial, it "is proper only if, taking the evidence and inferences in the light most favorable to the non-moving party, and assuming the jury would resolve all such factual disputes and inferences favorably to the non-moving party, the non-moving party still could not prevail at trial as a matter of law." Moradiellos v. Gerelco Traffic Controls, Inc., 176 So. 3d 329, 334-35 (Fla. 3d DCA 2015).

"But a motion for summary judgment is not a trial by affidavit or deposition. Summary judgment is not intended to weigh and resolve genuine issues of material fact, but only identify whether such issues exist. If there is disputed evidence on a material issue of fact, summary judgment must be denied and the issue submitted to the trier of fact." Perez-Gurri Corp. v. McLeod, 42 Fla. L. Weekly D2487 (Fla. 3d DCA Nov. 22, 2017). "At both the trial and appellate level, all evidence and inferences from the evidence must be taken in the light most favorable to the non-moving party." Moradiellos, 176 So. 3d at 334. This Court reviews *de novo* a trial court's ruling on a motion for summary judgment. Aberdeen at Ormond Beach, L.P., 760 So. 2d at 130.

# ANALYSIS

In support of the fraudulent transfer claim, Poker Run relies on two separate statutory theories of recovery, raised with particularity, in its motion for summary judgment. The first theory is based on a presumption of fraud under the Proceedings Supplementary Statute. Section 56.29(6)(a) provides:

> When, within 1 year before the service of process on him or her, defendant has had title to, or paid the purchase price of, any personal property to which the defendant's spouse, any relative, or any person on confidential terms with defendant claims title and right of possession at the time of examination, the defendant has the burden of proof to establish that such transfer or gift from him or her was not made to delay, hinder, or defraud creditors.

§ 56.29(6)(a). Poker Run's second theory is based on a presumption of fraud under section 726.105(1)(a) of the Fraudulent Transfer Act which provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose **before or after** the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: With **actual intent** to hinder, delay, or defraud any creditor of the debtor.

§ 716.105(1)(a) (emphasis added).

"Proof of fraud requires proof of intent. Obviously, in these situations, the parties will not readily admit to being instruments of fraud. Therefore, 'because of the difficulty of proving actual intent to defraud creditors, section 726.105(2) provides that fraudulent intent may be presumed from evidence of badges of

fraud.'" Mejia v. Ruiz, 985 So. 2d 1109, 1113 (quoting Beal Bank SSB v. Almand & Assocs., 780 So. 2d 45, 60 (Fla. 2001)). The language of section 726.105(2) provides as follows:

> In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:
> (a)  The transfer or obligation was to an insider.
> (b)  The debtor retained possession or control of the property transferred after the transfer.
> (c)  The transfer or obligation was disclosed or concealed.
> (d)  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
>  . . .
> (g)  The debtor removed or concealed assets.
>  . . .
> (j)  The transfer occurred shortly before or shortly after a substantial debt was incurred.

§ 726.105(2).

In its motion for summary judgment, Poker Run asserted that Gorrin's actions met all the above factors as: a) Gorrin transferred the assets for his family's benefit; b) Gorrin retained his manager status after the transfer; c) the transfer was concealed using the Trust as a vehicle; d) Gorrin was sued one year and two months before the transfer; g) Gorrin used the Trust to disguise and conceal assets; and j) the transfer occurred both before and after Gorrin incurred a substantial debt. Poker Run further asserted it established a prima facie case of a fraudulent transfer and that the burden of proof shifted to Gorrin to prove the transfer was not

9

fraudulent. Stephens v. Kies Oil Co., Inc., 386 So. 2d 1289, 1290 (Fla. 3d DCA 1980) (citation omitted) ("These badges of fraud create a prima facie case and raise a rebuttable presumption that the sale was void.").

"The proof required to show that a transfer is fraudulent is the preponderance of the evidence standard." Mejia, 985 So. 2d at 1113 (citation omitted); see also Wieczoreck v. H & H Builders, Inc., 475 So. 2d 227, 228 (Fla. 1985). "Ordinarily, the issue of fraud is not a proper subject of a summary judgment. Fraud is a subtle thing, requiring a full explanation of the facts and circumstances of the alleged wrong to determine if they collectively constitute a fraud." Automobile Sales, Inc. v. Federated Mut. Implement & Hardware Ins. Co., 256 So. 2d 386, 386 (Fla. 3d DCA 1972) (citations omitted) (reversing the granting of summary judgment).

Summary judgment is rarely granted in fraudulent transfer cases, as the determination of intent often presents a genuine issue of material fact. See Rosen v. Zoberg, 680 So. 2d 1050, 1051 (Fla. 3d DCA 1996) (reversing summary judgment because genuine issues of material fact remain unresolved as to whether the defendants acted with fraudulent intent), overruled on other grounds by Friedman v. Heart Inst. of Port St. Lucie, Inc., 863 So. 2d 189 (Fla. 2003); Yaralli v. Am. Reprographics Co., LLC, 165 So. 3d 785, 789 (Fla. 4th DCA 2015) (reversing the granting of summary judgment on the fraudulent transfer count); cf.

Amjad Munim, M.D., P.A. v. Azar, 648 So. 2d 145, 153 (Fla. 4th DCA 1994) (summary judgment affirmed where the sole shareholder of a judgment debtor simply transferred the assets of one P.A., in which he was the sole shareholder, to another P.A., in which he was the sole shareholder, without consideration and within days of the entry of a substantial judgment against the judgment debtor).

"While a single badge of fraud may amount only to a suspicious circumstance, a combination of badges will justify a finding of fraud." Mejia, 985 So. 2d at 1113 (citation omitted). This consideration must be balanced against the principle that "[s]ummary judgment is available in fraud cases only in extraordinary circumstances." Stephens, 386 So. 2d at 1290 (citing Automobile Sales, Inc., 256 So. 2d 386 (finding that the entry of summary judgment was premature when debtor's evidence showing motivation to sell his business tended to rebut the presumption of fraud creating an issue to be resolved by the trier of fact).

Here, the trial court found that Gorrin's affidavit was a fraud and struck it as a sham based on the deposition testimony of Beilmann and the LLC Documents. However, on a motion for summary judgment, it is well-established that the trial court may not adjudge the credibility of witnesses or weigh the evidence. Hernandez v. United Auto. Ins. Co., 730 So. 2d 344, 345 (Fla. 3d DCA 1999). If believed by the trier of fact, Gorrin's evidence that the transfer was made for estate

11

planning purposes, pursuant to a promise that he had made to his wife and without the intent to defraud any creditor, could rebut the presumption of fraud. Because the summary judgment evidence presents a genuine issue of material fact – whether Gorrin's transfer of his 95% ownership interest in Lacross to the Trust was fraudulently made with the intent to protect Gorrin's assets from execution – the trial court erred in granting summary judgment. Also, to the extent that there exist conflicts in Beilmann's deposition testimony, the resolution of those conflicts, likewise, should be left for the trier of fact.[6]

Alternatively, Gorrin asserts that in the event the final summary judgment against Gorrin is upheld, a charging order against Gorrin's membership interest in Lacross is Poker Run's sole and exclusive remedy as Lacross is a multiple member LLC. See § 605.0503, Fla. Stat. (2015).[7] Relying on Olmstead v. F.T.C., 44 So.

---

[6] In addition to accepting the statutory theories of recovery raised by Poker Run, the trial court found that the transfer was void under the LLC Documents. However, this theory of recovery could not form the basis for summary judgment in favor of Poker Run because it was not raised by Poker Run in its motion. See Williams v. Bank of America Corp., 927 So. 2d 1091, 1093 (Fla. 4th DCA 2006) (reversing the entry of summary judgment on a ground not raised with particularity, as required by Florida Rule of Civil Procedure 1.510(c), in the motion).

[7] Section 605.0503(1) provides: "On application to a court of competent jurisdiction by a judgement creditor of a member or a transferee, the court may enter a charging order against the transferable interest of the member or transferee for payment of the unsatisfied amount of the judgment with interest. Except as provided in subsection (5) [applicable to single member LLCs], a charging order constitutes a lien upon a judgment debtor's transferable interest and requires the limited liability company to pay over to the judgment creditor a distribution that would otherwise be paid to the judgment debtor."

12

3d 76 (Fla. 2010), Gorrin contends that the lower court's ruling which maintains the status quo *as to all assets of Lacross* is effectively a permanent injunction against Lacross and beyond that allowed by section 605.0503. We agree.

In Abukasis v. MTM Finest, Ltd., 199 So. 3d 421 (Fla. 3d DCA 2016), Eliahu Abukasis appealed a post-judgment order, entered pursuant to sections 605.0503(7)(b), (c) and 726.108(1)(c)(3), Florida Statutes, transferring his membership interest in an LLC toward the satisfaction of a money judgment held against him by MTM Finest, Ltd. This Court reversed the trial court's order "finding no authority for an order directly transferring an interest in a property to a judgment creditor in partial or full satisfaction of a money judgment." Abukasis, 199 So. 3d at 422. In so doing, this Court cited to Regions Bank v. Hyman, which explained that amendments to former section 605.0503, previously numbered 608.433, were brought on by Olmstead, 44 So. 3d 76, "to clarify the exclusive remedies available to a judgment creditor as to a judgement debtor's interest in an LLC: a charging order or a charging order followed by a foreclosure sale." Regions Bank v. Hyman, 2015 U.S. Dist. LEXIS 55011, at *7 (M.D. Fla. Apr. 27, 2015); see Abukasis, 199 So. 3d at 423. This Court further stated that "[t]he attempted application of section 725.108, Florida Statutes, the fraudulent transfer statute, is similarly flawed." Abukasis, 199 So. 3d at 423. Therefore, the trial

court's order freezing the assets of Lacross exceeded the scope of that allowed under section 605.0503.

## CONCLUSION

Because there are genuine issues of material fact as to whether Gorrin's transfer of his 95% interest in Lacross to the Trust was fraudulent and because the freezing of the assets of Lacross exceeded the scope of available remedies under Florida law, we reverse the final summary judgment granted in favor of Poker Run and against Gorrin and remand for further proceedings consistent herewith.

REVERSED AND REMANDED.