# Third District Court of Appeal

## State of Florida

Opinion filed January 13, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-2513
Lower Tribunal No. 08-36794
_____

### Alvaro Gorrin Ramos,
Appellant/Cross-Appellee,

vs.

### Mississippi Real Estate Dispositions, LLC, et al.,
Appellees/Cross-Appellants.

An Appeal from the Circuit Court for Miami-Dade County, Jennifer D. Bailey, Judge.

Law Offices of Mendez & Mendez, P.A., and Sergio L. Mendez, Daniel J. Mendez and Lorena Friger, for appellant/cross-appellee.

Carlton Fields, P.A., and Jose A. Loredo and Rachel A. Oostendorp, for appellee Mississippi Real Estate Dispositions, LLC; Mark Pollack Law P.A., and Mark E. Pollack (Boynton Beach), for appellee/cross appellant Sunstate Bank.
.


Before SCALES, HENDON and MILLER, JJ.

SCALES, J.

Appellant, the judgment debtor below, Alvaro Gorrin Ramos ("Ramos") appeals a December 20, 2019 order in proceedings supplementary (the "Order") that requires cross-appellant Sunstate Bank ("Sunstate") to pay the sum of $2,827,034 to appellee, the judgment creditor below, Mississippi Real Estate Dispositions, LLC ("Mississippi"), for Ramos's membership units in a Florida limited liability company. We reverse because the Order provides Mississippi with a remedy not authorized by section 605.0503 of the Florida Statutes.

**I. Facts**

*A. Proceedings Supplementary and the Charging Order*

In 2005, Ramos and his son, Alvaro Gorrin, Jr., personally guaranteed $56 million in loans that Ocean Bank provided to two development companies to finance the purchase of rental apartments in Orange County, Florida, and to convert the apartments into residential condominiums. The projects were unsuccessful and spawned multiple litigations. In one of them, Poker Run Acquisitions, Inc. ("Poker Run"), which had purchased the Ramos/Gorrin, Jr. loan/guaranty package from Ocean Bank, sued Ramos and Gorrin Jr. for breach of the guaranties. In 2013, Poker Run obtained a total judgment against Ramos and Gorrin Jr. of approximately $30 million.

In February 2016, Poker Run initiated supplementary proceedings in aid of execution. Among other things, it sought execution against Ramos's 41,085

2

membership units in Intercontinental Bankshares LLC, a multi-member limited liability company related to Intercontinental Bank (the "Membership Units").[1] The Membership Units were represented by Certificate 25.

In 2010, however, Ramos had pledged the Membership Units as collateral for a loan Ramos received from a friend in Venezuela named Romulo Alberto Moncada Yepez ("Yepez"). In December 2014, Ramos filed in the trial court documents memorializing the Yepez loan transaction, including a Unit Pledge Agreement, a Hypothecation Security Agreement and a Promissory Note. According to the Yepez loan transaction documents, the Membership Units that secured the loan are held by escrow agent Enrique Vejar Santos ("Santos").[2]

Poker Run impleaded Intercontinental Bankshares LLC and, in May 2016, the trial court entered a charging order, constituting a lien against the Membership Units (the "Charging Order"). The Charging Order expressly states that its entry does not constitute an adjudication regarding priorities over any competing interests in the

---

[1] Alvaro Gorrin Jr. holds 415 membership units in Intercontinental Bankshares, LLC that are subject to a charging order but are not at issue in this appeal.

[2] In 2017, Poker Run filed a Third Amended Complaint in Proceedings Supplementary, seeking, among other things, to add both Yepez and Santos as proceedings supplementary defendants. Poker Run, though, was unable to obtain service on either Yepez or Santos and, on June 26, 2018, the trial court dismissed both men from the case. Hence, the trial court has no personal jurisdiction over Yepez or Santos.

Membership Units. Then, in May 2018, Poker Run assigned its interests in the judgment against Ramos to Mississippi and Mississippi substituted into the case below as plaintiff/judgment creditor.

*B. Sunstate and The Merger Agreement*

In March 2018, Sunstate entered into a merger agreement with Intercontinental Bank, the merger closing in August 2018 (the "Merger Agreement"). Sunstate was the surviving entity of the merger. Mississippi obtained an order amending the Charging Order and impleaded Sunstate, Intercontinental Bank and Intercontinental Bankshares LLC (the latter, after an earlier dismissal of it as a supplementary defendant).

The Merger Agreement authorized Intercontinental Bankshares LLC's members to redeem their membership units and receive a cash payment from Sunstate. The Merger Agreement expressly provided that, to redeem their units for payment, holders of membership units (including Ramos) must transmit to an escrow agent the original certificate representing the membership units, along with a Transmittal Letter warranting that the membership units are free of encumbrance.

After being impleaded as a supplementary defendant, Sunstate filed a response stating to the trial court that it could not pay Ramos for the Membership Units until Ramos complied with the specific redemption provisions of the Merger Agreement – that is, Ramos must surrender the original Certificate 25 to Sunstate's

escrow agent together with the delivery of the required Letter of Transmittal. The trial court entered a September 2018 order that enjoined Clear Trust, LLC, the exchange agent for the merger of Sunstate and Intercontinental Bank, from disbursing funds to Ramos pursuant to the Merger Agreement.

*C. The Turnover Motions*

In November 2018, and again in February 2019, Mississippi filed a Motion in Proceedings Supplementary to Turnover Funds to Satisfy Charging Orders (the "Turnover Motion"). In these motions, Mississippi sought an order from the trial court requiring Clear Trust, LLC, on behalf of Sunstate, to pay the redemption proceeds for the Membership Units to Mississippi. On October 1, 2019, the trial court entered an order partly granting Mississippi's February 2019 Turnover Motion. This October 1, 2019 order required Ramos to surrender the Membership Units and execute the Transmittal Letter. In response to the order, Ramos declared that he was unable to comply because he was not in possession of the original Certificate 25, having pledged the Membership Units, some nine years earlier, to Yepez as collateral for the Yepez loan. Mississippi then filed its third Turnover Motion, in which it asked the trial court to exercise its equitable powers under section 56.29(6)

of the Florida Statutes[3] and fashion a remedy to overcome Ramos's inability to comply with the redemption provisions of the Merger Agreement.

*D. The Order*

On November 26, 2019, the trial court conducted a hearing on Mississippi's third Turnover Motion and, on December 20, 2019, entered the Order. In the Order, the trial court found that Ramos, by pledging the Membership Units as collateral for the Yepez loan, "created the circumstances of his inability to comply with the requirements of the Merger Agreement." The trial court, in reliance upon section 56.29(6), ordered Sunstate to remit to Mississippi the sum of $2,827,034[4] to satisfy the Charging Order, irrespective of the redemption provisions of the Merger Agreement. Ostensibly to protect Sunstate from any claim by Yepez, the trial court also required Mississippi to post a $3,000,000 surety bond for a period of five years, and obligated Mississippi to indemnify and hold Sunstate harmless from any future

---

[3] In relevant part, this statute provides: "The court may order any property of the judgment debtor, not exempt from execution, or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt. The court may enter any orders, judgments, or writs required to carry out the purpose of this section . . . against any person to whom a Notice to Appear has been directed and over whom the court obtained personal jurisdiction . . . , subject to applicable principles of equity . . . ." § 56.29(6), Fla. Stat. (2019).

[4] The Merger Agreement established this value of the Membership Units by dividing the total purchase price of membership units by the outstanding number of membership units to yield a "Per Share Consideration."

claims related to the Membership Units. Both Ramos and Sunstate timely appealed the Order.

## II. Analysis[5]

Ramos and Sunstate argue that, in fashioning its remedy benefiting judgment creditor Mississippi under the auspices of section 56.29, the trial court contravened the express limitations set forth in section 605.0503, which governs a judgment creditor's rights with respect to a judgment debtor's membership interest in a limited liability company. Mississippi counters by asserting that section 56.29 vests the trial court with broad equitable powers in proceedings supplementary and provides sufficient authority for the trial court to fashion the remedy prescribed in the Order. Given the facts of this case, we agree with Ramos and Sunstate that the trial court's equitable powers to fashion remedies in proceedings supplementary are limited by the specific provisions of section 605.0503.[6]

---

[5] We review a question of law arising from supplementary proceedings below *de novo*. Longo v. Associated Limousine Servs., Inc., 236 So. 3d 1115, 1118 (Fla. 4th DCA 2018).

[6] Because we reverse on this ground, we do not reach, and express no opinion on, Sunstate's argument that section 56.29's authority for the trial court to fashion an equitable remedy in proceedings supplementary does not include the power to alter the express terms of a bilateral agreement, such as the Merger Agreement, when one of the parties to the agreement (Sunstate) is neither a judgment creditor nor a debtor. Additionally, while we are concerned that the Order might have affected the collateral securing the Yepez loan – a loan made before Poker Run's judgment – because of our reversal of the Order on other grounds, we need not, and therefore do

Section 605.0503 provides, in relevant part, as follows: "On application to a court of competent jurisdiction by a judgment creditor of a member . . . , the court may enter a charging order against the transferable interest of the member . . . for payment of the unsatisfied amount of the judgment with interest . . . . [A] charging order constitutes a lien upon a judgment debtor's transferable interest and requires the limited liability company to pay over to the judgment creditor a distribution that would otherwise be paid to the judgment debtor." § 605.0503(1), Fla. Stat. (2019). Critically, subsection 605.0503(3) further provides that the charging order authorized by subsection 605.0503(1): "…is the *sole and exclusive remedy* by which a judgment creditor . . . may satisfy a judgment from the judgment debtor's interest in a limited liability company or rights to distribution from the limited liability company." § 605.0503(3), Fla. Stat. (2019) (emphasis supplied).[7]

Florida's courts have concluded that section 605.0503(3)'s "sole and exclusive remedy" language restricts courts from providing a remedy beyond the narrow scope of the permissible charging order authorized in section 605.0503(1).

not, reach the issue as to whether the trial court's lack of personal jurisdiction over Yepez and Santos provides an additional basis for reversal of the Order.

[7] Sections 605.0503(4) and (5) provide broader remedies to a creditor of a debtor who is a member of a limited liability company with only one member, but these sections are inapplicable because International Bankshares LLC is a multi-member LLC.

One such case – with clear echoes of the instant case – is <u>Gorrin v. Poker Run Acquisitions, Inc.</u>, 237 So. 3d 1149 (Fla. 3d DCA 2018). There, Alvaro Gorrin, Jr. transferred most of his ownership in an LLC (not the LLC of the instant case) to a family trust after Poker Run filed suit on the Ramos/Gorrin, Jr. Ocean Bank guaranties. In proceedings supplementary, Gorrin, Jr. maintained that the transfer was for an estate planning purpose rather than for the fraudulent purpose alleged by Poker Run. <u>Id.</u> at 1152. The trial court granted both summary judgment and a charging order in favor of Poker Run against Gorrin Jr.'s interest in the LLC. <u>Id.</u> at 1153. In furtherance of the charging order, the trial court ordered that the "status quo be preserved as to all assets" of the LLC, which, Gorrin, Jr. argued, amounted to an unauthorized permanent injunction against the LLC. <u>Id.</u>

This Court, emphasizing the limited remedy provided by the statute, held that the portion of the order freezing the assets of the LLC "exceeded the scope of that allowed under section 605.0503." <u>Id.</u> at 1156; <u>see</u> <u>McClandon v. Dakem & Assocs., LLC</u>, 219 So. 3d 269, 271 (Fla. 5th DCA 2017) (reversing a portion of a charging order that, to give the charging order "teeth," also appointed a receiver to take control of the LLCs' finances); <u>Young v. Levy</u>, 140 So. 3d 1109, 1112 (Fla. 4th DCA 2014) (reversing the trial court's garnishment order that required a multi-member LLC to disburse the LLC's profits to a creditor, based on the "sole and exclusive remedy" provision of section 605.0503's predecessor statute); <u>see also</u>

Abukasis v. MTM Finest, Ltd., 199 So. 3d 421, 423 (Fla. 3d DCA 2016) (reversing a post-judgment order that transferred the judgment debtor's membership units in an LLC to the judgment debtor).

Like the lower court orders reversed by the appellate courts in those cases, the Order in this case went beyond what section 605.0503(1) permits – that is, a charging order merely restricting Ramos's alienability of the Membership Units and requiring that Mississippi be paid distributions otherwise payable to Ramos. While we are not unsympathetic to the trial court's attempt to craft a fair and practical result in this difficult case, it is well settled that a trial court may not exercise its equitable powers to contravene statutory law. See State v. Hernandez, 278 So. 3d 845, 849 (Fla. 3d DCA 2019).

## III. Conclusion

Section 605.0503(3) plainly states that the charging lien provided for in section 605.0503(1) is a judgment creditor's "sole and exclusive remedy" regarding a judgment debtor's membership interest in a multi-member limited liability company. Hence, notwithstanding the equitable powers vested in a trial court pursuant to section 56.29(6), we are compelled to reverse the Order because the relief provided therein to Mississippi exceeds the express scope of relief a trial court may afford a judgment creditor under section 605.0503(1).

Reversed.