DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

MICHEL LASSITER,

Appellant,

v.

CITIZENS PROPERTY INSURANCE COMPANY,

Appellee.

No. 2D2022-2609

_____

May 29, 2024

Appeal from the County Court for Pinellas County; Lorraine M. Kelly,
Judge.

Hans Peter B. Haahr of Haahr Law Group, PL, St. Petersburg, for
Appellant.

Kathryn L. Ender and Ross Berlin of Lewis Brisbois Bisgaard & Smith
LLP, Coral Gables (withdrew after briefing); Kathryn L. Ender of
Dinsmore & Shohl LLP, Miami (substituted as counsel of record), for
Appellee.

MORRIS, Judge.

Michel Lassiter appeals from the final summary judgment entered
in favor of Citizens Property Insurance Company in Lassiter's action for
breach of insurance contract. The underlying dispute involves Lassiter's
submission of a claim for roof damage and resulting leaks in her home
and Citizens' denial of the claim. In Lassiter's action below, Citizens filed

a motion for summary judgment, arguing that Lassiter did not have any evidence to meet her burden of proving that a covered peril damaged her roof and created an opening that allowed water in. The trial court granted Citizens' motion, entered final summary judgment in Citizens' favor, and subsequently denied Lassiter's motion for reconsideration.

We conclude that the trial court impermissibly weighed the evidence in ruling on Citizens' motion when it determined that the parties' affidavits resulted in a "tie" and that there were no genuine disputes as to a material fact precluding summary judgment. We therefore reverse.

BACKGROUND

Lassiter owns a home in Largo, Florida, which was insured by Citizens at the time of the event at issue. Lassiter alleged that in April 2020, her home sustained damage caused by high winds and hail that occurred during a storm. Lassiter asserted that the wind and hail damaged her roof causing leaks and resulting in interior water damage. Citizens denied the claim on the basis that the damage was the result of wear and tear, which was not covered under the insurance policy. Citizens also informed Lassiter that the policy "does not provide coverage for water damage to the inside of a building unless an opening is first created by a peril insured against through which the rain, snow, sleet or dust then enters and causes damage."

Thereafter, Lassiter filed her breach of contract action. In its answer and affirmative defenses, Citizens admitted that the policy provided coverage for Lassiter's property, but it contended that the damage to the interior of the property was caused by rain and that "the loss to the roof [was] due to damages resulting from wear and tear, marring and/or deterioration."

2

In its motion for summary judgment, Citizens asserted that Lassiter could not "carry her burden to establish peril-related damage and an opening in her roof." Citizens relied on a provision in the insurance policy which specifically excluded coverage for losses caused by "[r]ain, snow, sleet, sand, or dust to the interior of a building unless a covered peril first damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening." Citizens also relied on a separate exclusion for "[w]ear and tear, marring, chipping, scratches, dents, or deterioration." Citizens included an affidavit from its corporate representative; the affidavit incorporated findings of and photographs taken by the Citizens' field adjuster who inspected Lassiter's home after Lassiter filed her claim. According to the corporate representative, the inspection report revealed that there were "no signs of covered damage to the roof or exterior of Plaintiff's property" and that, instead, there were "signs of wear and tear to the roof and clogged gutters."

Citizens also attached depositions from Lassiter, Lassiter's personal inspector, and Lassiter's public adjuster. Lassiter testified that she had holes in her roof as a result of the storm. Lassiter explained that she first discovered the alleged storm-related water damage during a subsequent rainstorm when she noticed that everything was getting wet in her office, and she looked up and saw "water coming through the ceiling." She testified that to her knowledge, her roof had never leaked prior to the April 2020 storm. She further testified about having the holes "sealed" by a handyman. It is undisputed that Lassiter never identified any specific holes in the roof.

Lassiter's private inspector testified that he observed "impact marks" on the roof which "changed the structure of the material."

3

However, he also testified that he could not identify any specific holes or openings in the roof.

Lassiter's public adjuster[1] testified that he did not personally go to Lassiter's home. Instead, he relied on the private inspector's report. The public adjuster testified that he concluded that there was "evidence of wind created openings, whether temporary or not, where the roof panels bowed/separated allowing the water to enter inside the home." The public adjuster testified that he reached this conclusion based on his conversation with the private inspector, on the information and photos provided by the inspector in an estimate for repair, and on his conversation with Lassiter. The public adjuster testified that some of the metal panels on the roof were "misshapen" which he believed was consistent with wind damage. When asked about the location of the openings in the roof that had been reported to Citizens, he responded that the openings could be "[a]nywhere where these panels are misshapen and . . . no longer laying flat and . . . crimped on seams." When asked to specifically describe the openings in the roof, the public adjuster responded that "not all wind created openings are immediately obvious," but he acknowledged that specific openings in the roof were not marked in photos. The public adjuster maintained, however, that the photos reflected widespread roof damage with misshapen panels and "multiple points of entry."

Prior to the summary judgment hearing, Citizens' corporate representative was deposed. The corporate representative admitted that

---

[1] Lassiter's counsel stipulated that Lassiter would not be offering the public adjuster as an expert witness but would instead offer him as a fact witness. Citizens makes no argument in this appeal that the public adjuster's deposition testimony was partially or fully inadmissible or that it contained improper opinion testimony that should not be considered.

she had no personal knowledge of the facts set forth in the affidavit and had not been to the property herself. The corporate representative also acknowledged that her affidavit failed to contain any weather data relating to the time of the loss or any opinions as to the cause of the damages if they were not the result of wind and hail.

Lassiter filed a response to the motion for summary judgment and filed an affidavit of her expert, Justino Ferrer Hopgood, an engineer. The affidavit also attached Hopgood's report containing Hopgood's analysis of how high winds and hail can affect a roof, as well as Hopgood's opinion as to the cause of Lassiter's damages. Hopgood did not inspect the property; instead, he relied, in part, on observations made more than eighteen months after the alleged date of loss by a technician from a private company. Hopgood also relied on weather data for the six month period prior to the alleged date of loss through the month of April 2020. Citizens argues, and Lassiter does not dispute, that Hopgood did not address other weather data for time periods following the alleged date of loss but prior to the technician's inspection. Hopgood's opinions were not based solely on the technician's report. Hopgood also relied on "statements made by and/or evidence collected from the insured and/or representatives of the insured."[2]

Hopgood opined that within a reasonable degree of engineering certainty, Lassiter's property was affected by high wind and hail that

---

[2] It is unclear whether Hopgood meant that he relied on Lassiter's, her private inspector's, and her public's adjuster's deposition testimonies or whether he was referring to other conversations with Lassiter and/or the private inspector and public adjuster. But we note that the depositions were all conducted prior to the date of Hopgood's report. Even if Hopgood relied on other undocumented conversations, the point is that his opinions were not based solely on the report of the independent technician.

created openings to the exterior walls and roof, allowing water to enter and cause damage. Hopgood opined that the damages that were observed by the technician during the inspection of Lassiter's property were consistent with direct and indirect wind damage, hail impact, and moisture infiltration. Hopgood further opined that the openings created by the wind and hail allowed moisture to enter the property and to damage insulation and sheetrock. Hopgood eliminated wear and tear, marring, chipping, scratches, dents, or deterioration as the proximate cause of the damages. Instead, Hopgood opined that it was the wind, wind-borne debris impacts, and hail that were the proximate cause of the majority of the damages to Lassiter's property.

At the summary judgment hearing, Citizens argued that Lassiter failed to meet her burden of proving that a covered peril caused the damage to her property, specifically arguing that Lassiter herself could not identify a single hole in her roof which allowed water to enter into the property. Citizens asserted that the Hopgood affidavit was also insufficient because Hopgood did not inspect or otherwise personally observe the property and did not identify a specific opening in the roof through which water entered.

In response, Lassiter contended that she met her burden of proving that her property suffered damage during the policy period and that, therefore, Citizens bore the burden of proving that the damage was excluded from coverage under the policy. Lassiter also contended that Hopgood's affidavit, wherein he specifically disagreed with Citizens' contention that the damage was caused by marring, scratches, dents, or wear and tear, created a genuine dispute about a material fact, thereby precluding summary judgment.

6

The trial court inquired whether anyone went to the property and took close-up pictures of the roof to reflect any possible ripples in the roof panels. Lassiter's counsel responded by arguing that while there were no photographs showing an opening through which rain may have entered the property, sometimes openings in roofs are so minute that they cannot be seen and that the fact that they were not reflected in pictures did not mean that they were not there.

In ruling on the motion, the trial court stated:

> So I would—I think that probably the two dueling affidavits in this case, it's a tie because neither one of them like crawled around and wandered and looked, you know what I mean? So to me, those affidavits are not really of much value because they're two or three times removed from the physical condition of the roof. So what, you know, this is—this is the world we live in now. We have the new [standard for a] motion for summary judgment. I think probably under the old one, arguably this case would've, you know, would've—until a material fact. What's an opening and was there an opening that's caused by a storm? But that's not the universe we live in anymore. We're under the federal standard. And I—the correctness, I mean, basically it's a directed verdict, and I'm just--I'm quoting the exact language from *Anderson v. Liberty Lobby*,[3] which is . . . one of the three cases along with *Celotex*,[4] which says that the Court must decide if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

The trial court stated that if the affidavits were taken out, the remaining evidence consisted of the photographs, the summary of findings by the adjuster,[5] and Lassiter's testimony. The trial court noted that there was no documentation reflecting any opening in the roof or anything

---

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250-51 (1986).

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] We construe this reference to mean Citizens' adjuster.

7

suggesting "that there was some kind of a physical loss." The trial court explained that "I just don't think a reasonable jury would return a verdict for the non-moving party under these circumstances."

In the written order, the trial court found that Lassiter's deposition testimony established that the cause of the damage was rain which satisfied Citizens' burden of proving that the rain exclusion stated in the policy applied and that Lassiter failed to present sufficient evidence to withstand summary judgment. The trial court then granted Citizens' motion.

Lassiter moved for reconsideration, in part arguing that Hopgood had prepared an affidavit in another case with the same facts that was heard before a different judge and that in that case, summary judgment had been denied. She further argued that during her deposition she had testified that there were holes in her roof and that the testimony from her private inspector and public adjuster, combined with Hopgood's affidavit, was sufficient to withstand summary judgment.

In response, Citizens contended that the facts of the other case were not apparent and that even if they were similar or the same as the facts in this case, that suggested that Hopgood was submitting boilerplate affidavits. Citizens argued that that fact strengthened its argument that Hopgood's affidavit lacked case specific factual observations sufficient to withstand summary judgment.

Ultimately, the trial court denied the motion for reconsideration and entered its final order in Citizens' favor.

## ANALYSIS

We review an order granting summary judgment de novo. *Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000). "We view the facts in the light most favorable to [the nonmoving

8

party] and may not weigh the evidence or make credibility determinations."  *G & G In-Between Bridge Club Corp. v. Palm Plaza Assocs.*, 356 So. 3d 292, 297 (Fla. 2d DCA 2023).

Summary judgment should only be entered if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 309 So. 3d 192, 196 (Fla. 2020); *see also* Fla. R. Civ. P. 1.510(a).  "[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' "  *In re Amends. to Fla. Rule of Civ. Proc. 1.510*, 317 So. 3d 72, 75 (Fla. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also G & G In-Between Bridge Club Corp.*, 356 So. 3d at 297.

"It is improper to consider either the weight of the conflicting evidence or the credibility of witnesses" in ruling on a motion for summary judgment.  *Bernhardt v. Halikoytakis*, 95 So. 3d 1006, 1008-09 (Fla. 2d DCA 2012) (citing *Juno Indus., Inc. v. Heery Int'l*, 646 So. 2d 818, 822 (Fla. 5th DCA 1994)).  This remains the general rule even under the new summary judgment standard that is applicable to this case.  *See, e.g., Gracia v. Sec. First Ins.*, 347 So. 3d 479, 482 (Fla. 5th DCA 2022) (explaining that even under the new summary judgment standard, "credibility determinations and weighing the evidence 'are jury functions, not those of a judge' " (quoting *Anderson*, 477 U.S. at 255)); *see also Navarro v. Borges*, No. 3D23-0175, 2024 WL 1422996, at *2 (Fla. 3d DCA Apr. 3, 2024); *Daniel's Tree Serv., Inc. v. Nat'l Core Servs. Corp.*, 379 So. 3d 524, 530-31 (Fla. 4th DCA 2023).[6]  "[A] motion for summary judgment

---

[6] Though the rule is not absolute, it is "[o]nly when the record evidence blatantly contradicts a litigant's version of the facts [that] a

is not a trial by affidavit or deposition." *Clampitt v. Wick*, 320 So. 3d 826, 833 (Fla. 2d DCA 2021) (quoting *Gorrin v. Poker Run Acquis., Inc.*, 237 So. 3d 1149, 1153 (Fla. 3d DCA 2018)). "Summary judgment is not intended to weigh and resolve genuine [disputes as to any] material fact, but only [to] identify whether such issues exist." *Id.* (quoting *Gorrin*, 237 So. 3d at 1153); *see also Navarro*, 2024 WL 1422996, at *2 ("[C]ompeting material evidentiary showings are incapable of resolution on summary judgment.").

Here, the record suggests that the trial court disregarded both Citizens' and Hopgood's affidavits because, according to the trial court, they resulted in a "tie" due to the fact that neither affiant personally inspected the roof. In doing so, the trial court erred. The trial court's reference to differences between what is required under the old and new summary judgment standards, within the context of determining that the affidavits resulted in a "tie," suggests that the trial court interpreted the new summary judgment standard as allowing it to weigh and judge the credibility of the evidence. *Cf. Gracia*, 347 So. 3d at 482. Such an interpretation is erroneous. *Id.* The affidavit presented by Citizens supported its position that the water intrusion was the result of wear and tear. The Hopgood affidavit presented by Lassiter supported her position that the water intrusion was not caused by wear and tear but was caused by damage to her roof from wind, wind-borne debris, and hail. These competing affidavits created a genuine dispute as to a material fact, that is, the cause of the damage to Lassiter's roof.[7]

---

court [will] be allowed to weigh conflicting evidence or determine the credibility of a witness." *Gracia*, 347 So. 3d at 482 n.1. That is not the factual scenario here.

[7] In addition to the Hopgood affidavit, Lassiter's deposition testimony and that of her public adjuster also supported her position

Citizens argues that the trial court properly disregarded Hopgood's affidavit because it was based on conjecture or speculation.[8]  Specifically, Citizens points to Hopgood's failure to identify a specific opening in the roof and the fact that he based his opinion on the report of the independent technician which contained findings that were inconsistent with Hopgood's conclusions regarding the condition of the roof and whether the reported hail was large enough to cause the damage alleged. Citizens contends that "[w]ithout identification of an opening, *the evidentiary value of Hopgood's affidavit*" was insufficient to withstand summary judgment.  Citizens relies on *Florida Windstorm Underwriting v. Gajwani*, 934 So. 2d 501, 506 (Fla. 3d DCA 2005), for the proposition that where there is only evidence of wind-driven rain and no evidence of a covered peril-created opening in a home, such evidence is insufficient to create a genuine dispute as to a material fact about the coverage in an insurance policy similar to the one here.  However, in *Gajwani*, the *only*

---

regarding the damage and possible cause.  In the written order, the trial court focused on Lassiter's deposition testimony.  But the trial court also found that "[n]one of the other documents in the record suggest a physical loss to the exterior of the property such that a reasonable jury could return a verdict for Plaintiff."  This finding is in conflict with Hopgood's affidavit which we have already determined was improperly disregarded.  This finding is also in conflict with Lassiter's public adjuster's deposition testimony wherein he discussed openings in the roof due to misshapen roof panels and crimped seams.

[8] We are not convinced by Citizens' reliance on *Gonzalez v. Citizens Property Insurance*, 273 So. 3d 1031, 1037 (Fla. 3d DCA 2019), wherein the expert inspected a home one year after the roof had been replaced, which prevented the expert from providing a description of the physical appearance of wind damage or other explanation for the damage caused to the roof prior to its replacement.  Such facts are not the facts of this case.

evidence presented was that rain entered the appellees' homes through window and sliding glass door openings along with seeping through flooring and cracks in the stucco. *Id.* Further, the appellees in that case "*conceded* that they could not offer any evidence of [water] entry through openings in the roof or walls caused by" a hurricane. *Id.* (emphasis added).

In this case, Lassiter presented the Hopgood affidavit along with her and her public adjuster's deposition testimonies, all of which referred to either holes or openings in the roof through which water entered. Hopgood opined within a reasonable degree of engineering certainty that the openings were caused by high wind, wind-borne debris, or hail. And the public adjuster concluded, based on his conversations with the private inspector, review of the private inspector's report, the photos, and his conversation with Lassiter, that the misshapen roof panels were consistent with wind damage and that they constituted the openings through which water entered. Lassiter never conceded that there was no evidence of water entry though openings in the roof but instead has always maintained that she presented such evidence. Consequently, *Gajwani* is factually distinguishable and does not control this case.

Furthermore and as already explained herein, the trial court was not permitted to weigh the evidentiary value of the competing affidavits in determining whether summary judgment was appropriate because that is contrary to "the bedrock principle that summary judgment is not a substitute for the trial of disputed fact issues." *In re Amends. to Fla. Rule Civ. Proc. 1.510*, 309 So. 3d at 194; *see also Clampitt*, 320 So. 3d at 833.

The time for determining the weight and the credibility of evidence and resolving the genuine dispute about the cause of the roof damage is at trial. Thus the trial court erred by doing so at the summary judgment

12

stage.  We therefore reverse the final summary judgment and remand for proceedings in accordance with this opinion.[9]

Reversed and remanded.

BLACK and ROTHSTEIN-YOUAKIM, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

---

[9] Lassiter also raised the issue of the admissibility of Citizens' corporate representative's affidavit, arguing that it was hearsay. However, while there were brief references to the alleged hearsay nature of the affidavit in the introduction portion of Lassiter's initial brief, Lassiter failed to present any argument related to this issue.  It was only in Lassiter's reply brief that she made specific arguments relating to the hearsay issue.  Thus we do not consider that issue.  *See Plichta v. Plichta*, 899 So. 2d 1283, 1287 (Fla. 2d DCA 2005) ("Issues raised on appeal for the first time in a reply brief are not properly before this court and will not be considered.").  Even if we could consider that issue, it is unnecessary to do so given our disposition of the case.